CRAIG G. STAUB, Bar No. 172857
cstaub@littler.com
LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
Telephone: 213.443.4300
Facsimile:  213.443.4299

MAGGY ATHANASIOUS, Bar No. 252137
mathanasious@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
Telephone: 310.553.0308
Facsimile:  310.553.5583

Attorneys for Defendants
ALL FREIGHT CARRIERS INC. and AFC
LOGISTICS INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| WAYNE YARIAN, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALL FREIGHT CARRIERS INC., an Illinois Corporation; AFC LOGISTICS INC., an Illinois Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.   19-cv-9172<br><br>ASSIGNED FOR ALL PURPOSES TO JUDGE<br><br>**DEFENDANTS' NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT**<br><br>**[28 U.S.C. §§ 1332, 1441, 1446]**<br><br>State Complaint Filed:  August 16, 2019 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF WAYNE YARIAN AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants ALL FREIGHT CARRIERS INC. d/b/a AFC TRANSPORT, INC. ("AFC") and AFC LOGISTICS INC. (collectively "Defendants") hereby remove the above-captioned action from the Superior Court for the State of California, County of Los Angeles to the United States District Court for the Central District of California. This removal is based on 28 U.S.C. sections 1441 and 1446. This Notice is based upon the original jurisdiction of this Court over the parties under: (1) 28 U.S.C. section 1332(a) and the existence of complete diversity of citizenship among the parties; and (2) 28 U.S.C. section 1332(d) (Class Action Fairness Act of 2005 ("CAFA")).

## STATEMENT OF JURISDICTION

1.      This Court has original jurisdiction over this action under the diversity of citizenship statute. *See* 28 U.S.C. § 1332(a). In relevant part, the diversity statute grants district courts original jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. As set forth below, this case meets all of the diversity statute's requirements for removal and is timely and properly removed by the filing of this Notice. *See* 28 U.S.C. §§ 1332, 1441(a) and 1446.

2.      Additionally and alternatively, this Court has original jurisdiction over this action under the CAFA, which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with United States Code, title 28, section 1446. As set forth below, this case meets all of CAFA's

requirements for removal and is timely and properly removed by the filing of this Notice.

### VENUE

3.      Based on Plaintiff's filing of the Complaint in the Superior Court for the State of California, Los Angeles County, venue lies for removal purposes in the United States District Court for the Central District of California, Western Division, pursuant to 28 U.S.C. sections 84(c)(2), 1391(a) and 1441(a).[1]

### PLEADINGS, PROCESS AND ORDERS

4.      On August 16, 2019, Plaintiff WAYNE YARIAN ("Plaintiff") filed an unverified class action Complaint for Damages asserting breach of contract claims and wage and hour violations under the California Labor Code and Wage Orders in the Superior Court for the State of California, Los Angeles County: *WAYNE YARIAN, individually, and on behalf of all others similarly situated, Plaintiff, vs. ALL FREIGHT CARRIERS INC., an Illinois Corporation; AFC LOGISTICS INC., an Illinois corporation; and DOES 1 through 100, inclusive, Defendants*, Case Number 19STCV28735 (hereinafter the "Complaint").  A true and correct copy of the Complaint is attached as **Exhibit A** to the Declaration of Maggy M. Athanasious in Support of Defendants' Notice to Federal Court of Removal of Civil Action ("Athanasious Decl."), ¶ 5.

5.      Plaintiff's Complaint asserts 12 claims: (1) failure to provide required meal periods; (2) failure to provide required rest periods; (3) failure to pay overtime wages; (4) failure to pay minimum wage; (5) failure to pay all wages due to discharged or quitting employees; (6) failure to maintain required records; (7) failure to provide accurate itemized wage statements; (8) failure to indemnify employees for necessary expenditures incurred in discharge of duties; (9) unlawful deductions from wages; (10)

---

[1] Defendants contend that Plaintiff's filing of the Complaint in the Los Angeles County Superior Court is improper as the Parties have entered into a valid and binding contractual agreement including a forum selection clause requiring this action to be litigated in Illinois.  Defendants will move to transfer venue following removal.

breach of contract; (11) breach of covenant of good faith and fair dealing; (12) unfair and unlawful business practices.  Athanasious Decl., ¶ 5 at **Exhibit A**.

6.     That same day, August 16, 2019, Plaintiff also filed a Civil Case Cover Sheet and the Court issued a Summons and Notice of Case Assignment.  True and correct copies of the aforementioned documents are attached collectively as **Exhibit B** to the Athanasious Decl., ¶ 6.

7.     On August 22, 2019, Plaintiff filed a peremptory challenge under Code of Civil Procedure section 170.6 challenging the judicial assignment.  A true and correct copy of the peremptory challenge filed by Plaintiff is attached as **Exhibit C** to the Athanasious Declaration, ¶ 7.

8.     On that same date, August 22, 2019, the Court issued a Minute Order and Certificate of Mailing on Plaintiff's peremptory challenge.  True and correct copies of the aforementioned documents are attached collectively as **Exhibit D** to the Athanasious Declaration, ¶ 8.

9.     On September 6, 2019, the Court issued an Initial Status Conference Order (Complex Litigation Program), Minute Order Regarding Newly Filed Class Action and Certificate of Mailing regarding same.  True and correct copies of the aforementioned documents are attached as **Exhibit E** to the Athanasious Declaration, ¶ 9.

10.     On September 24, 2019, Plaintiff served Defendants with the documents identified as Exhibits A - E, specifically, the Complaint; Civil Case Cover; Summons; Notice of Case Assignment; Peremptory Challenge and the Court's order and certificate of mailing regarding same; and the Initial Status Conference Order (Complex Litigation Program), Minute Order Regarding Newly Filed Class Action and Certificate of Mailing regarding same.  Additionally, Plaintiff served Voluntary Efficient Litigation Stipulations and the Alternative Dispute Resolution (ADR) Information Packet. True and correct copies of these additional documents, along with the completed Summons, are attached as **Exhibit F** to the Athanasious Decl., ¶ 10.

11.     On October 23, 2019, Plaintiff filed a Proof of Service - Summons

reflecting service on AFC Logistics Inc. on September 24, 2019, and a Proof of Service By Mail on that same date.   On October 23, 2019, Plaintiff also filed a Proof of Service - Summons reflecting service on All Freight Carriers Inc. on September 24, 2019, and a Proof of Service By Mail on that same date.   True and correct copies of the aforementioned documents are collectively attached as **Exhibit G** to the Athanasious Declaration, ¶ 11.

12.   On October 23, 2019, Defendants filed a peremptory challenge and supporting papers under Code of Civil Procedure section 170.6 challenging the judicial assignment.   True and correct copies of the aforementioned documents are attached as **Exhibit H** to the Athanasious Declaration, ¶ 12.

13.   Also on October 23, 2019, Defendants filed their Answer to Plaintiff's Complaint.   A true and correct copy of Defendants' Answer is attached as **Exhibit I** to the Athanasious Declaration, ¶ 13.

14.   Pursuant to 28 U.S.C. § 1446(d), the aforementioned attached Exhibits A through I constitute all process, pleadings and orders served on or received by Defendants or filed in this action. To Defendants' knowledge, no further process, pleadings, or orders related to this case have been filed in the Superior Court of California, County of Los Angeles or served by any party.  To Defendants' knowledge, no proceedings related hereto have been heard in the Los Angeles Superior Court. Athanasious Decl. ¶ 5-14.

## INDIVIDUAL & DOE DEFENDANTS

15.    No individual defendants are named in this action.   Defendants are informed and believe that none of the Doe defendants in this case have been identified or served. Athanasious Decl., ¶ 15.  As such, they need not join or consent in this Notice of Removal and are to be disregarded for the purpose of removal.  28 U.S.C. § 1441(a); *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984) (named defendants not yet served in state court action need not join in notice of removal).

1

**TIMELINESS OF REMOVAL**

2        16.     This Notice of Removal is timely.  Under 28 U.S.C. § 1446(b), the notice

3   of removal of a civil action must be filed within 30 days after service of the summons

4   and complaint.  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 354

5   (1999) (the 30-day removal period runs from the service of the summons and complaint;

6   receipt of summons and complaint is insufficient to trigger removal period).   On

7   September 24, 2019, the Complaint and Summons were served on Defendants.   As

8   Defendants filed this Notice of Removal within 30 days of service of the summons and

9   complaint, this Notice of Removal is timely as a matter of law.

10   **DIVERSITY JURISDICTION UNDER 28 USC 1332(b)**

11        17.     The diversity of citizenship statute provides in pertinent part that "[t]he

12   district courts shall have original jurisdiction of all civil actions where the matter in

13   controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

14   between– (1) citizens of different States . . . ."  28 U.S.C. § 1332(a).

15        18.     "Any civil action" commenced in state court is removable if it might have

16   been brought originally in federal court.  *See* 28 USC § 1441(a).  Any case that could

17   have been commenced in federal court based on diversity of citizenship can be removed

18   from state court on this ground.  *See* 28 U.S.C. § 1441(b).  In order to remove a case to

19   federal court on diversity grounds, two basic elements must be satisfied: (1) complete

20   diversity must exist between the parties, i.e., Plaintiff and Defendant must be "citizens"

21   of different states; and (2) the amount in controversy must exceed $75,000.  *See* 28

22   U.S.C. § 1332.

23        19.     This action is a civil action over which this Court has original jurisdiction

24   under 28 U.S.C. § 1332 and which may be removed to this Court by Defendants

25   pursuant to 28 U.S.C. § 1441(a) based on the existence of complete diversity of

26   citizenship between the real parties to this action and on the fact that the amount in

27   controversy exceeds $75,000, as set forth below.

28

**A.     COMPLETE DIVERSITY OF CITIZENSHIP EXISTS.**

**<u>Plaintiff Is A Citizen Of The State Of Florida</u>.**

20.     Diversity of citizenship exists so long as no plaintiff is a citizen of the same state as any defendant at the time the action was filed and at the time of removal. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983); *see also LeBlanc v. Cleveland*, 248 F.3d 95, 100 (2d Cir. 2001) (citizenship determined at the time the lawsuit is filed); *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir. 1991).  A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return.  *See Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

21.     At the time Plaintiff commenced this action and at the time of removal, Plaintiff was a citizen of the State of Florida.  Plaintiff entered into an Independent Contractor Equipment Lease Agreement ("IC Agreement") with AFC, executed by him December 3, 2018; Plaintiff last performed services for AFC on April 26, 2019. Declaration of Donald Hinson in Support of Defendants' Notice of Removal to Federal Court ("Hinson Decl."), ¶ 5, Ex. A.  In the IC Agreement, Plaintiff listed his address as being in Zephyrhills, Florida.  *Id*. at ¶ 6, Ex. A.  In all of the records Plaintiff filled out or submitted to AFC, Plaintiff represented that his home address was the same address in Zephyrhills, Florida.  *Id*. at ¶ 6.  Plaintiff's Commercial Drivers License and W-9 form both consistently identify his address as located in Zephyrhills, Florida.  *Id*. ¶ 6, Exs. B-C. Additionally, Plaintiff represented in records submitted to the United States Bankruptcy Court for the Middle District of Florida in January 2018 and 2019 that he lives at the same address in Zephyrhills, Florida as identified in the aforementioned other documents.  Athanasious Decl.,¶ 16, **Exhibits J - K**. Thus, Defendants have established by a preponderance of the evidence that Plaintiff resides and is domiciled in the State of Florida and is therefore a citizen of Florida.  *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (residency can create a rebuttable presumption of domicile

supporting diversity of citizenship); *State Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of domicile).

### Defendants Are Not Citizens Of The State Of California.

22.     For purposes of Section 1332, a corporation is deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.  *See* 28 U.S.C. § 1332(c)(1).  As clarified by the United States Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181; 175 L. Ed. 2d 1029 (2010), "the phrase 'principal place of business' in § 1332(c)(1) refers to the place where a corporation's high level officers direct, control, and coordinate the corporation's activities, i.e., its 'nerve center,' which will typically be found at its corporate headquarters." *Id.* at 80.

23.     Neither Defendant All Freight Carriers Inc., nor AFC Logistics Inc. are state officials, or other governmental entities.  Hinson Decl., ¶ 2.

24.     **Defendant All Freight Carriers Inc.** Defendant All Freight Carriers, Inc. d/b/a AFC Transport Inc. is incorporated under the laws of the State of Illinois and maintains its principal place of business in Illinois.  Hinson Decl., ¶ 3.  Its executives, directors and officers are based out of its Illinois corporate headquarters. *Id*. Illinois is also where Defendant All Freight Carrier's Inc.'s centralized administrative functions and operations are based, and it is the actual center of direction, control, and coordination for its operations. *Id*.  Under the applicable standard, All Freight Carrier's Inc.'s principal place of business is indisputably located in Illinois.  Therefore, its citizenship is Illinois.

25.     **Defendant AFC Logistics Inc.** Defendant AFC Logistics Inc. is incorporated under the laws of the State of Illinois and maintains its principal place of

business in Illinois.  Hinson Decl., ¶ 4.  Its executives, directors and officers are based out of its Illinois corporate headquarters.  *Id*. Illinois is also where Defendant AFC Logistics Inc.'s centralized administrative functions and operations are based, and it is the actual center of direction, control, and coordination for its operations.  *Id*.  Under the applicable standard, AFC Logistics Inc.'s principal place of business is indisputably located in Illinois.  Therefore, its citizenship is Illinois. Defendants Does 1 through 100 are fictitious.

26.     The Complaint does not set forth the identity or status of any said fictitious defendants, nor does it set forth any charging allegation against any fictitious defendants.  Pursuant to section 1441(a), the citizenship of defendants sued under fictitious names must be disregarded for the purposes of determining diversity jurisdiction and cannot destroy the diversity of citizenship between the parties in this action.  *Newcombe v. Adolf Coors Co.,* 157 F.3d 686, 690-91 (9th Cir. 1998).

27.     Based on the foregoing, diversity is established between Plaintiff and Defendants because Plaintiff and all Defendants are citizens of different states.

### B.     THE AMOUNT IN CONTROVERSY EXCEEDS $75,000. [2]

28.     Defendants need only show by a preponderance of the evidence (that it is more probable than not) that Plaintiff's claimed damages exceed the jurisdictional minimum.  *Sanchez v. Monumental Life Ins. Co*, 102 F.3d 398, 403-04 (9th Cir. 1996).  Further, the U.S. Supreme Court has held under 28 U.S.C. § 1446(a), a defendant seeking to remove a case to federal court need only file "a notice of removal 'containing a short and plain statement of the grounds for removal.'"  *Dart Cherokee Basin Operating Co. LLC v. Owens*, 135 S. Ct. 547, 553 (2014).  The Court held that this

---

[2] The alleged damages calculations contained herein are for purposes of removal only. Defendants deny that Plaintiff or the putative class are entitled to any relief whatsoever and expressly reserve the right to challenge Plaintiff's alleged damages in this case. *Ibarra v. Manheim Inv., Inc.* 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (explaining that even when the court is persuaded the amount in controversy exceeds the jurisdictional minimum, defendants are still free to challenge the actual amount of damages at trial because they are only estimating the amount in controversy).

language tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure, and that "[a] statement 'short and plain' need not contain evidentiary submissions." *Id.* at 551, 553. Defendants need to only plausibly allege that the amount in controversy exceeds $75,000. *Id.* ("the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court"). Here, the Court can reasonably ascertain from the Complaint and its Prayer for Relief that the amount in controversy exceeds $75,000. *See Singer v. State Farm Mutual Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) ("The district court may consider whether it is facially apparent from the complaint that the jurisdictional amount is in controversy." (internal citations and quotations omitted)).

29.     Plaintiff's Complaint does not specify the amount that he seeks to recover from Defendants in this action. Plaintiff's prayer for relief includes prayers for: compensatory damages, restitution, meal and rest period compensation, liquidated damages, actual and statutory damages, statutory penalties, civil penalties, interest, attorneys' fees and injunctive relief. *See Id.*, Prayer, ¶¶ 1-14. *See* Prayer for Relief, ¶¶ 1-14. Although Defendants deny that they should be liable for the damages alleged in Plaintiff's Complaint, for purposes of determining whether the minimum amount in controversy has been satisfied, the Court must presume that Plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).

30.     The ultimate inquiry is the amount that is put "in controversy" by Plaintiff's Complaint, and not how much, if anything, Defendants will actually owe. *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005); *see also Schere v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages it not what is considered in the removal analysis; rather, it is the amount put in controversy by the plaintiff's complaint).

31.     In addition to attorneys' fees, Plaintiff seeks meal period premiums, rest

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

10.

period premiums, minimum wages for time worked during meal periods and any unpaid time, unpaid overtime, waiting time penalties, penalties for failing to provide accurate itemized wage statements, penalties for failing to maintain required records, failure to reimburse business expenses, actual damages and penalties for unlawful wage deductions and breach of contract claims. *See* Complaint *generally*.

32.     Plaintiff also alleges a cause of action for a violation of the Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200, *et seq.* Compl. ¶¶ 78-83. Alleging a UCL violation may extend the statute of limitations for Plaintiff's and the putative class's meal and rest period claims, expense reimbursement, overtime and minimum wage claims from three to four years from the filing of the Complaint, which in this case, extends the statute of limitations to August 16, 2015. *See* Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolater Air Filtration Products Co.*, 23 Cal. 4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).

33.     Plaintiff was an independent contractor providing delivery services to Defendant All Freight Services, Inc. d/b/a AFC Transport Inc., pursuant to an IC Agreement.[3]  Hinson Decl., ¶ 5, Ex. A.  Pursuant to the IC Agreement, independent contractors including Plaintiff are paid 80% of the gross revenue on loads they transport. *Id*. at ¶ 8.  The remaining 20% of gross revenue is deducted for fixed overhead expenses such as sales, accounting, customer service, safety and dispatch services. *Id*. Of the net amount owed to the IC drivers (i.e., gross revenue – 20% fixed overhead), deductions from that amount are made for specific expenses incurred by the IC including for fuel, insurance, truck payment, trailer payment, tolls, flatbed equipment and license plates. *Id*.

34.     Plaintiff was paid weekly. *Id*. at ¶ 8.  He picked up his first load on December 5, 2018.  He transported a total of 52 loads, all of which exceeded five hours

---

[3] Plaintiff never contracted with or performed work for AFC Logistics Inc.; he had no relationship with that entity whatsoever. Hinson Decl., ¶ 5.  Thus, AFC Logistics Inc. is an improperly named defendant.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

1   of drive time.  *Id.* at ¶ 5.  Plaintiff last performed services for AFC on April 26, 2019.
2   *Id.*

3          35.     Defendants deny the validity and merits of Plaintiff's claims, the legal
4   theories upon which they are purportedly based, and the claims for monetary and other
5   relief that flow from them.  Nevertheless, the amount in controversy as alleged by
6   Plaintiff far exceeds the sum of $75,000.

7          36.     **Expense Reimbursement and Unlawful Deductions Claims**.  Plaintiff
8   seeks in his Eighth Cause of Action to recover allegedly unreimbursed business
9   expenses under Labor Section 2802 on behalf of himself and members of the putative
10  class.  The Labor Code states, "[a]n employer shall indemnify his or her employee for
11  all necessary expenditures or losses incurred by the employee in direct consequence of
12  the discharge of his or her duties."  Lab. Code § 2802 (a).  He contends that Defendants
13  "knowingly and willfully failed to indemnify PLAINTIFF and CLASS MEMBERS for
14  all business expenses and/or losses incurred in direct consequence of the discharge of
15  their duties while working under the direction of DEFENDANTS, including but not
16  limited to expenses for uniforms, cell phone usage, and other employment-related
17  expenses, in violation of California Labor Code § 2802."  Complaint, ¶ 54.  Plaintiff
18  seeks to recover reimbursement for all necessary expenditures, plus interest, as well as
19  "all available statutory penalties and an award of costs, expenses, and reasonable
20  attorneys' fees…" Complaint, ¶ 55.  Further, in Plaintiff's Ninth Cause of Action, he
21  contends the Defendants took unlawful deductions from his wages.  Complaint, ¶ 56-
22  64.  He contends he is owed his back wages plus interest for the deductions made, as
23  well as any penalties.  *Id.* at 64.

24         37.     In calculating potential exposure for reimbursement during the four-year
25  statute of limitations, AFC reviewed its internal records reflecting Plaintiff's gross
26  revenue, deductions by AFC for overhead and deductions for specific expenses
27  including fuel, equipment and insurance.  Hinson Decl., ¶¶ 7-9.  Plaintiff's gross
28  revenue during the statutory period was $88,186.65.  Of this amount, 20% was deducted

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

12.

as fixed overhead, equaling $17,637.33 in deductions. Additionally, $59,993.05 was deducted for direct expenses including fuel costs, equipment and insurance, bringing the total deductions for expenses to **$77,630.38**. *Id*. at ¶ 10. Thus, based on Plaintiff's expense reimbursement claim alone, the amount in controversy exceeds $75,000 and all of the requirements of diversity are satisfied.

38. **Meal and Rest Period Claims**. In Plaintiff's First and Second Causes of Action, he contends that Defendants failed to provide him with legally compliant meal and rest periods. Complaint, ¶ 20-28. Plaintiff further claims that Defendants failed to pay him penalties in the amount of one hour of additional compensation at his regular rate of pay for each missed meal and missed rest break. *Id*.

39. California law permits recovery of one additional hour of pay at the employee's regular rate of compensation for each workday a meal period was not provided as a meal break premium, as well as for each workday a rest period was not provided as a rest break premium (up to a total of two premiums per day). Cal. Lab. Code § 226.7. The statutory period for recovery for a California Labor Code section 226.7 claim pursued with a Business & Professions Code claim is four years. *See* Cal. Civ. Proc. Code § 338(A) (setting out a three-year limitations period); Cal. Bus. & Prof. Code § 17208 (explaining the three-year statute of limitations can be extended to four years through the pleading of a companion claim under the UCL).

40. If Plaintiff prevailed on his meal and rest break claims based on an independent contractor theory, it would be reasonable to apply a 100% violation rate. Thus, he would be entitled to meal period penalties and rest period penalties in the amount of two additional hours of compensation (one for missed meal and one for missed rest per shift) for each of the 52 loads driven by Plaintiff, each of which exceeded 5 hours of drive time and were therefore meal-eligible shifts. Hinson Decl., ¶ 5. This would only further bring Plaintiff's amount in controversy in excess of $75,000.

41. **Waiting Time Penalties**. In the Fifth Cause of Action, Plaintiff seeks waiting time penalties pursuant to California Labor Code section 201 *et seq*., which

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

13.

provides that if an employer willfully fails to pay wages owed at the time of termination, then the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid for a maximum of thirty (30) days.  Compl. ¶ 38-44.  The statute of limitations for Plaintiff's Labor Code section 203 waiting time penalty claim is three years.  *Pineda v. Bank of Am., N.A.,* 50 Cal.4th 1382, 1935 (2010) ("no one disputes that when an employee sues to recover both unpaid final wages and the resulting section 203 penalties, the suit is governed by the same three-year limitations period that would apply had the employee sued to recover only the unpaid wages").

42.    Here, Plaintiff last provided services to AFC on April 26, 2019.  Hinson Decl., ¶ 5.  He claims he was not paid all wages due and owing at that time.  Thus, if he were successful in establishing that he was owed unpaid minimum wages, unpaid overtime or wages that were improperly deducted, he would be owed 30 days of pay at his hourly rate.  This would only further increase the amount in controversy over $75,000.

43.    **Failure To Furnish Accurate Itemized Wage Statements**.  Plaintiff alleges that Defendants knowingly and intentionally failed to provide Plaintiff and the class members with proper, itemized wage statements as the wage statements provided did not accurately state gross wages earned, total hours worked, all deductions made, net wages earned and the name and address of the employer.   Complaint ¶ 49.

44.    An employee seeking to recover under California Labor Code section 226(e) is entitled to recover "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)."  Labor Code § 226(e).  The statutory period for Labor Code § 226(e) penalties is one year. Cal. Code Civ. Proc. § 340.

45.    Since Plaintiff contends that the wage statements were deficient with regard to identifying the employer's name and address, this alleged violation would be applicable to each wage statement issued to Plaintiff.  Plaintiff was issued 21 wage

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

14.

1  ("settlement") statements.  Hinson Decl., ¶ 8.  Thus, Plaintiff would be entitled to
2  **$2,050** on his wage statement claim were he to prevail ($50 for initial pay period +
3  ($100 x 20 subsequent pay periods).

4       46.  **Attorneys' Fees.**  Plaintiff also seeks attorneys' fees and costs.
5  Complaint, Prayer for Relief, ¶ 10.  In determining whether a complaint meets the
6  amount in controversy requirement, a court must also consider statutory attorneys' fees.
7  *See, e.g.*, *Bell v. Preferred Life*, 320 U.S. 238 (1943); *Kroske v. U.S. Bank Corp.*, 432
8  F.3d 976, 980 (9th Cir. 2005), *cert. denied*, 127 S. Ct. 157 (2006); *Galt G/S v. JSS
9  Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying
10  statute authorizes an award of attorneys' fees, either with mandatory or discretionary
11  language, such fees may be included in the amount in controversy."); *Goldberg v.
12  C.P.C. Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorneys' fees may be taken
13  into account to determine jurisdictional amounts).  In California, it is not uncommon
14  for an attorneys' fee award to be twenty-five to thirty-three percent of a settlement or
15  judgement.  Any estimate of attorney's fees includes fees over the life of the case, not
16  just the fees incurred at the time of removal.  *Fritsch v. Swift Transportation Co. of
17  Arizona, LLC*, 899 F.3d 785, 794-95 (9th Cir. Aug. 8, 2018 )  Thus, assuming Plaintiff
18  can recover at least $80,000 on his individual wage claims, a conservative 25%
19  attorneys' fee award would add at least **$25,000** to the amount in controversy.

20       47.  The above expense reimbursement and wage statement calculations, as
21  well as request for attorneys' fees, reflect that there is at least **$104,680** in controversy,
22  well in excess of $75,000 on Plaintiff's individual wage and hour claims.  This is true
23  even without assigning a specific valuation to his meal and rest period claims, waiting
24  time penalty claim, unpaid minimum wage and overtime claims and breach of contract
25  claims.  Had those values been added to the amount in controversy, they would only
26  further increase the amount well above the $75,000 threshold.  Thus, the amount in
27  controversy requirement is satisfied by a preponderance of the evidence and Defendants
28  have established diversity.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

15.

## CAFA JURISDICTION UNDER 28 USC 1332(d)

48.    CAFA grants United States district courts original jurisdiction over: (a) civil class action lawsuits filed under federal or state law; (b) where the alleged class is comprised of at least 100 individuals; (c) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (d) where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332 (d).  CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446.  As set forth below, this case meets each CAFA requirement for removal, and is timely and properly removed by the filing of this Notice of Removal.

### A.  PLAINTIFF FILED A CLASS ACTION UNDER STATE LAW

49.    Plaintiff filed his action as a class action based on alleged violations of California state law.  Complaint, ¶¶ 4-5; *see also* Caption.

### B.  THE PROPOSED CLASS CONTAINS AT LEAST 100 MEMBERS

50.    28 U.S.C. § 1332(d)(5)(B) states that the provisions of CAFA do not apply to any class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100."

51.    Plaintiff filed his action on behalf of himself and "the following similarly situated class of individuals ("CLASS MEMBERS"): all current and former drivers, including but not limited to those misclassified as independent contractors, who performed work for DEFENDANTS in the State of California at any time within the period beginning four (4) years prior to the filing of this action and ending t the time this action settled or proceeds to final judgment (the "CLASS PERIOD")."  Complaint, ¶ 5.

52.    Plaintiff alleges that the "potential class is a significant number."  Complaint, ¶ 19.a.  Based on a review of Defendants' records, there are approximately 193 current and former drivers who performed work for AFC in California who are part of the putative class during the four year class period defined by Plaintiff in his Complaint (i.e., from August 16, 2015 to present).  Hinson Decl., ¶ 8.  Accordingly,

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

16.

1   Defendants' records demonstrate that there are well over 100 putative class members in
2   this case.

3   **C. DEFENDANTS ARE NOT GOVERNMENTAL ENTITES**

4   53.    Under 28 U.S.C. § 1332(d)(5)(B), CAFA does not apply to class actions
5   where "primary defendants are States, State officials, or other governmental entities
6   against whom the district court may be foreclosed from ordering relief."

7   54.    As set forth above, Defendants All Freight Carriers Inc. and AFC
8   Transport Inc. are not states, state officials, or other governmental entities.  Hinson
9   Decl. ¶ 2.

10   **D. THE REQUISITE DIVERSITY OF CITIZENSHIP EXISTS**

11   55.    "Under CAFA, complete diversity is not required; 'minimal diversity'
12   suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).  Minimal
13   diversity of citizenship exists here because Plaintiff and Defendants are citizens of
14   different states.

15   56.    As set forth above, Plaintiff is a citizen of the State of Florida.  *See* ¶ 20,
16   *supra*; Hinson Decl., ¶ 6, Ex. A; Athanasious Decl., ¶ 16, Exs. J - K.

17   57.    As set forth above, Defendant All Freight Carriers Inc. is a citizen of the
18   State of Illinois because it is incorporated under its laws and its principal place of
19   business is located in Illinois.  *See* ¶ 23, *supra*; Hinson Decl., ¶ 3.

20   58.    As set forth above, Defendant AFC Logistics Inc. is a citizen of the State
21   of Illinois because it is incorporated under its laws and its principal place of business is
22   located in Illinois.  *See* Section ¶ 24, *supra*; Hinson Decl., ¶ 4.

23   59.    Thus, because Plaintiff is a citizen of the State of Florida and Defendants
24   are citizens of the State of Illinois, Diversity exists between Plaintiff and Defendants
25   for purposes of CAFA jurisdiction. 28 U.S.C. §§ 1332(d)(2)(A), 1453(b).

26   **E. THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000**

27   60.    This Court has jurisdiction under the CAFA, which authorizes the
28   removal of class actions in which, among the other factors mentioned above, the amount

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

17.

1   in controversy for all class members exceeds $5,000,000.  28 U.S.C. § 1332(d).  "The

2   claims of the individual class members shall be aggregated to determine whether the

3   matter in controversy exceeds" this amount.  28 U.S.C. § 1332(d)(6).

4       61.     The removal statute requires that a defendant seeking to remove a case

5   to federal court must file a notice "containing a short and plain statement of the grounds

6   for removal." 28 U.S.C. § 1446(a).    As described above, pursuant to *Dart Cherokee*

7   *Basin Operating Co.,* 135 S. Ct. at 554, "a defendant's notice of removal need include

8   only a plausible allegation that the amount in controversy exceeds the jurisdictional

9   threshold"  and Defendants' "amount-in-controversy allegation should be accepted"

10  just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff

11  invokes federal court jurisdiction.  *Id.* at 553.

12      62.     For purposes of removal only, and without conceding that Plaintiff or the

13  putative class is entitled to any damages or penalties whatsoever, it is readily apparent

14  that the aggregated claims of the putative class establishes, by a preponderance of

15  evidence, that the amount in controversy well exceeds the jurisdiction minimum of

16  $5,000,000.  *See Lewis v. Verizon Communs., Inc.*, 627 F. 3d 395, 400 (9th Cir. 2010)

17  (the "amount in controversy is simply an estimate of the total amount in dispute, not a

18  prospective assessment of [D]efendant's liability").

19      63.     As noted above, Plaintiff defines the putative class as all current and

20  former drivers, "***including but not limited to those misclassified as independent***

21  ***contractors***, who performed worked in the State of California at any time" during the

22  class period.  Complaint, ¶ 5, emphasis added.  Because the Complaint was filed on

23  August 16, 2019 and Plaintiff defines the class period as the four years preceding the

24  filing of the Complaint, Plaintiff seeks to represent all drivers who drove in California

25  from August 16, 2015 through settlement or judgment in this matter.  *Id.*  There are

26  approximately 193 drivers who drove in California during this timeframe.  Hinson

27  Decl., ¶ 8.

28

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

18.

64.     **Expense Reimbursement and Unlawful Deductions Claims**.  As noted above, Plaintiff seeks to recover allegedly unreimbursed business expenses under Labor Section 2802 not only behalf of himself, but on behalf of the putative class comprised of current and former drivers who provided services from August 16, 2015 to the present.   Complaint, ¶¶ 52-55.   The Labor Code requires, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."  Lab. Code § 2802(a).  Further, in Plaintiff's Ninth Cause of Action, he contends the putative class is owed back wages plus interest for unlawful deductions made, as well as any penalties. Complaint, ¶ 56-64.

65.     The total number of drivers who provided services in California at any time during the four years prior to the filing of the Complaint is approximately 193.  Hinson Decl., ¶ 8.  Of those drivers, 101 were classified as independent contractors pursuant to an IC Agreement substantially similar to the one applicable to Plaintiff.[4]   *Id*. at ¶ 5, 8, Ex. A.  Under the terms of the IC Agreement, independent contractors were paid 80% of gross revenues on loads they delivered. *Id*. at ¶ 8.  The other 20% was deducted for fixed overhead expenses as described above. *Id*.  Additional deductions were made for specific expenses incurred including fuel, insurance, truck payment, trailer payment, tolls, flatbed equipment, and license plates, etc. *Id*.

66.     Based on a review of Defendants' internal records, total deductions for independent contractors from approximately August 2018 (including some limited data pre-dating within the statutory period but pre-dating August 2018)[5] to the present for

---

[4] The remaining 92 drivers were employees of AFC. Hinson Decl., ¶ 8.
[5] AFC transitioned to a new transportation management software program in August 2018. Hinson Decl., ¶ 7.  This software program houses information regarding the gross revenue for loads driven by a given independent contractor, the amounts deducted for overhead and expenses per driver and the net payment to a driver. *Id*.  Prior to that time, while records were maintained, they require a manual review or processes to compile data. *Id*.  Thus, for the purposes of removal, Defendants have predominantly relied on data available through their transportation software program post-August 2018.  Had Defendants included calculations from August 2015, the beginning of the class period, to August 2018, this would substantially increase the amount in controversy even

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

19.

20% of gross revenue to account for fixed overhead is about $3,390,583.50.  Hinson Decl., ¶ 11.  Total deductions for approximately this same time frame for specific expenses incurred by a given independent contractor for things like fuel, equipment, insurance and license plates (which will necessarily vary by each independent contractor) was about $8,739,916.41.  *Id*.  Thus, total deductions for fixed overheard and deductions for business expenses for the independent contractor's from about August 2018 to the present is about **$12,130,500**.[6]  *Id*.

67.     **Attorneys' Fees and Costs**.  As stated above, Plaintiff seeks attorneys' fees and costs and the Court must consider statutory attorneys' fees for purposes of determining the amount in controversy.  *Galt G/S*, 142 F.3d at 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."); Complaint, Prayer for Relief, ¶ 10.

68.     In California class actions, an attorneys' fees award typically ranges from 25 to 33 percent of the settlement of the award.  *See e.g., Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 n. 11 (2008) (*quoting Shaw v. Toshiba America Information systems, Inc.*, 91 F.Supp.2d 942, 972 ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery")).  Even assuming a 20% fee, Plaintiff's attorneys' fees would be approximately **$2,426,100.**

69.     Thus, taking into consideration only the expense reimbursement and unlawful deduction claims and request for attorneys' fees, the amount in controversy is about at least $14,556,600, easily exceeding the $5,000,000 threshold.  If the amounts in controversy for the putative class were calculated assuming a full recovery on

---

further in excess of $5,000,000.
[6] If this figure, which is based on approximately 13 months of data, were to be extrapolated to the remaining 35 months in the class period, the amount in controversy on the expense reimbursement and unlawful deductions claims would be in excess of $32 million ($12,130,500/13 months x 35 months).

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

20.

Plaintiff's meal break, rest break, unpaid overtime, unpaid minimum wage, wage statement, waiting time penalty and breach of contract claims, the amount in controversy would grow exponentially.

70.     Removal of this action is therefore proper as the aggregate value of Plaintiff's class claims for damages and statutory penalties and attorneys' fees is *well in excess* of the CAFA jurisdictional requirement of $5 million.  *See* 28 U.S.C. § 1332(d)(2).

## NOTICE TO PLAINTIFF AND STATE COURT

71.     Immediately following the filing of this Notice of Removal in the United States District Court for the Central District of California, Western Division, Defendants will arrange for notice of such filing to be given by the undersigned to Plaintiff's counsel of record, and for a copy of the Notice of Removal to be filed with the Clerk of the Los Angeles County Superior Court.  Athanasious Decl., ¶ 17.

WHEREFORE, having provided notice as required by law, the above-entitled action should be removed from the Los Angeles County Superior Court to this honorable District Court.

Dated:   October 24, 2019                          Respectfully Submitted,


                                                   /s/ *Maggy M. Athanasious*
                                                   CRAIG G. STAUB
                                                   MAGGY ATHANASIOUS
                                                   LITTLER MENDELSON, P.C.
                                                   Attorneys for Defendants
                                                   ALL FREIGHT CARRIERS INC. and
                                                   AFC LOGISTICS INC.

4846-4046-9418.2 105233.1000

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

21.